THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRICKLAND REAL ESTATE
HOLDINGS, LLC, a Washington limited
liability company,

        Plaintiff and Counter-Defendant,

     v.

TEXACO, INC., a Delaware corporation,

        Defendant and Counter-Claimant.

—————————————————————

TEXACO, INC., a Delaware corporation,

        Third-Party Plaintiff,

     v.

ESTATE OF LORENA M.
STRICKLAND-WILLIFORD and REX
THOMAS STRICKLAND, individuals,

        Third-Party Defendants.

CASE NO. C16-0653-JCC

ORDER ON MOTION TO COMPEL

This matter comes before the Court on the motion to compel by Plaintiff Strickland Real Estate Holdings, LLC (Dkt. No. 30). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons explained herein, GRANTS the motion in part and DENIES it in part.

ORDER ON MOTION TO COMPEL
PAGE - 1

1

## I.    BACKGROUND

2

3     This case is a dispute over liability for environmental contamination caused by a gas

4 station at 6808 196th Street SW in Lynnwood, Washington. (*See* Dkt. No. 30 at 2; Dkt. No. 31-1

5 at 40.) Under the Washington Model Toxics Control Act (MTCA), liability may be imposed on

6 "[a]ny person who owned or operated the facility at the time of disposal or release of the

7 hazardous substances." Wash. Rev. Code § 70.105D.040(1)(b). An "owner or operator" is

8 defined as "[a]ny person with any ownership interest in the facility or who exercises any control

over the facility." Wash. Rev. Code § 70.105.D.020(22).

9     On September 21 2015, the Washington Department of Ecology sent a letter to Plaintiff

10 Strickland Real Estate Holdings, LLC and Defendant Texaco, Inc.,[1] informing them that they

11 had been identified as potentially liable for the contamination. (Dkt. No. 31-1 at 40.) On

12 November 19, 2015, Texaco responded to Ecology with the following: "Our records indicate The

13 Texas Company, a predecessor of [Texaco], held a leasehold interest at the Site from 1958

14 through 1977. [Texaco] accepts status as a [potentially liable party] without admitting liability at

15 the Site." (*Id.* at 44.) Texaco sent a copy of its response to Strickland. (*Id.* at 45.)

16     On December 15, 2015, Strickland told Texaco it had records showing that Texaco leased

17 the property from Rex and Lorena Strickland and constructed a gas station that operated from

18 1959 until 1977. (*Id.* at 47.) These documents included: (1) a memorandum of lease for the

19 property, signed by Rex and Lorena Strickland and a Texaco representative; (2) a copy of

20 Texaco's plans for the station; (3) public records showing Texaco's involvement at the station,

21 including its payment of property taxes for underground storage tanks; and (4) a 1958 lease

22 between Rex Strickland and Texaco for another gas station property approximately 20 blocks

23 away. (*Id.* at 15-38.) Accordingly, Strickland proposed an agreement where Strickland would

24 ─────────────────

25     [1] More specifically, Ecology named Chevron Environmental Management Company

26 (CEMC) as the potentially liable party. (Dkt. No. 31-1 at 40.) CEMC manages environmental
matters for Texaco. (Dkt. No. 32 at 3 n.1.)

1    take the lead in remediating the property and Texaco would reimburse Strickland for costs

2    associated with remediation. (*Id.* at 48-49.)

3          On March 22, 2016, Texaco rejected Strickland's proposed agreement, stating that

4    Texaco was "unable to locate any files concerning the Property" and that Strickland "d[id] not

5    establish that Texaco exercised control over the Property." (*Id.* at 51.) Texaco subsequently

6    withdrew its acceptance of its potential liable status. (*Id.* at 54.)

7          On May 6, 2016, Strickland initiated the present suit seeking declaratory judgment "that

8    Texaco is liable for all future remedial action costs incurred by [Strickland] in response to the

9    contamination." (Dkt. No. 1-1 at 1, 4.) Strickland served Texaco with its first discovery requests,

10   which sought information about Texaco's lease of the property, Texaco's business practices and

11   other leases at the time, and Texaco's approach to liability at other stations. (Dkt. No. 31-1 at 58-

12   61; Dkt. No. 30 at 5.) Texaco objected to the requests on grounds of overbreadth, privilege,

13   relevance, and proportionality. (*Id.* at 68-70.) Strickland subsequently narrowed its requests. (*Id.*

14   at 3.) Texaco maintained its objections. (*Id.* at 8-10.)

15         Strickland now asks the Court to compel production of the requested discovery and to

16   award Strickland fees and costs for bringing this motion. (Dkt. No. 30.)

17   **II.     DISCUSSION**

18       **A.     Scope of Discovery**

19         "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

20   party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

21   When addressing proportionality, the Court considers "the importance of the issues at stake in

22   the action, the amount in controversy, the parties' relative access to relevant information, the

23   parties' resources, the importance of the discovery in resolving the issues, and whether the

24   burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The Court has

25   broad discretion to decide whether to compel disclosure of discovery. *Phillips ex rel. Estates of*

26   *Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

1    **B.**    **Analysis**

2        1.   <u>Discovery Disputes</u>

3        As a preliminary matter, the Court notes that Strickland's discovery requests reflect the

4    fact that the alleged underlying lease cannot be located. Accordingly, Strickland seeks other

5    information that may demonstrate, either directly or circumstantially, that Texaco can be held

6    liable for the contamination. The Court addresses the contested requests by subject matter and

7    with recognition of their narrowed scope. (*See* Dkt. No. 31-1 at 3.)

8        *Texaco's Business Practices*: Interrogatory No. 1 and Request for Production (RFP) No.

9    1 ask Texaco to describe its business practices in Washington regarding the lease of service

10   stations and to produce related documents.

11       Texaco objects that "the terms of the lease at the Property are absolutely unknown" and

12   that, "[a]t best, a response to this request will provide a number of possibilities of what could

13   have happened at the subject Property." (Dkt. No. 32 at 7.) Strickland responds that it possesses

14   documents "demonstrat[ing] that Texaco used form leases and plans with regard to its leasing of

15   service stations built to its specifications." (Dkt. No. 30 at 8.) Thus, Strickland asserts, the

16   requested information could show "that the terms of the lease are consistent with Texaco's

17   business practices in Washington at the time." (*Id.* at 8-9.) The Court acknowledges that the

18   response to this request could demonstrate that Texaco's business practices varied widely.

19   However, the response might also show that Texaco acted uniformly in these matters, providing

20   Strickland with circumstantial evidence to fill the gaps left by the missing lease. Especially in

21   light of the other evidence Strickland possesses—which tends to show that a lease did exist at

22   one time—the Court finds it likely that the requested discovery will be relevant.

23       Texaco further argues that the utility of the information is outweighed by the burden

24   posed. (Dkt. No. 32 at 7-8.) Strickland disputes this, noting that liability depends in large part on

25   Texaco's operation of the station. (*Id.* at 9.) Strickland further asserts that Texaco, as "a large

26   corporation with tremendous resources," has the ability to respond to a more involved request.

(*Id.*) The Court agrees. The requested discovery goes to the heart of this dispute, albeit in a circumstantial manner. Moreover, Texaco is the type of litigant that can respond to such a request. The Court thus finds the request proportional and GRANTS the motion as to Interrogatory No. 1 and RFP No. 1.[2]

*Other Leases*: RFP No. 4 asks Texaco to produce all leases between Texaco and landowners in King, Snohomish, and Pierce Counties between 1950 and 1974.

Strickland first asserts that "Texaco is the only party who might have its lease of the Station in its custody and control" and that Texaco "must comply with its discovery obligations and search for the lease." (Dkt. No. 30 at 9.) Texaco reiterates its position that it cannot locate the lease and that it has performed an adequate search to do so.[3] (Dkt. No. 32 at 8.) In light of the significant time that has passed since the date of the alleged lease, as well as counsel's sworn declaration that Texaco has been unable to locate the lease, the Court is satisfied that Texaco is not withholding the lease, either intentionally or negligently.

Texaco also argues that Strickland "offers no authority as to why the terms of other leases relating to other properties and other landowners would be relevant to establishing the terms of the lease at the Property," because "[e]ven form contracts can be amended." (*Id.* at 10.) Strickland responds that, if the lease no longer exists, other examples of the form leases between Texaco and service stations from that time period in surrounding counties would be relevant to the likely terms that existed in the lease of the subject property. (*Id.* at 9-10.) For the same reasons articulated above, the Court agrees. The Court GRANTS the motion as to RFP No. 4.

---

[2] Texaco also alleges that the stakes are small, because Strickland seeks damages of just $100,000. (Dkt. No. 32 at 8.) Strickland contests this, alleging damages in the $1 million to $2 million range. (Dkt. No. 35 at 2.) The Court finds the request reasonable in either event.

[3] Texaco further speculates that Third-Party Defendant Lorena M. Strickland "certainly might have had a copy of" the lease. (Dkt. No. 32 at 9.) Strickland disputes this, stating that Ms. Strickland-Willford was a "passive participant in Rex Strickland's business affairs" and had no such documents. (Dkt. No. 35 at 4.) The Court cannot imagine why Strickland would work so hard to obtain such a crucial document from Texaco if it had another option.

ORDER ON MOTION TO COMPEL
PAGE - 5

*Settlement Agreements*: RFP No. 5 asks Texaco to produce all settlement agreements related to environmental clean-up entered into from 2006 to 2016 between Texaco, Chevron, or CEMC and a landowner or lessor in King, Snohomish, and Pierce Counties.

Strickland asks the Court to compel production of these documents because "CEMC has been managing legacy environmental liabilities for Texaco for years" and "the switch in position regarding this property after litigation commenced . . . is likely directly contrary to CEMC's past practices in Washington." (Dkt. No. 30 at 10.) Strickland further notes that "cooperation with authorities is one of the 'equitable factors' this Court may use in allocating liability for cleanup costs in this case, and this change of position may be useful for this Court in an equitable allocation." (*Id.*)

The Court is unconvinced. As Texaco points out, its "switch in position" was due to further legal analysis as to the significance of the missing lease. (Dkt. No. 32 at 10-11.) Strickland makes no allegation that other settlements involved parallel situations where there was no conclusive proof a lease existed. It is thus unclear how Texaco's past practices in reaching settlements with other lessors—or Texaco's alleged change in position here— would inform any material question in this case.  The motion is DENIED as to RFP No. 5.

### 2. Request for Fees and Costs

Strickland seeks its reasonable fees and costs for bringing this motion. (Dkt. No. 30 at 11.) If the Court grants a Rule 37 motion, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees[, unless] the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A). Substantial justification exists if there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Texaco objects to the request for fees, arguing that its position was substantially justified.

ORDER ON MOTION TO COMPEL
PAGE - 6

1    (Dkt. No. 32 at 11.) While the Court largely granted Strickland's motion, the Court agrees that

2    there was reasonable dispute as to the relevance of the documents. Strickland's request for fees is

3    DENIED.

4              3.   Protective Order

5         Texaco asks that, if the Court grants the motion in whole or in part, the Court also enter a

6    protective order under Federal Rule of Civil Procedure 26 and grant Texaco 60 days to comply

7    with the discovery requests. (Dkt. No. 32 at 12.) Strickland stipulates to entry of a protective

8    order as requested by Texaco and a 30-day production schedule. (Dkt. No. 35 at 5.) The Court

9    GRANTS Texaco's request to enter a protective order, provided that the parties stipulate to the

10   terms of such order and present the order to the Court for approval. As for the production

11   schedule, the Court strikes a balance and ORDERS discovery to be produced within 45 days of

12   this order's issuance.

13   **III.   CONCLUSION**

14        For the foregoing reasons, Strickland's motion to compel (Dkt. No. 30) is GRANTED in

15   part and DENIED in part. The motion is GRANTED as to Interrogatory No. 1, RFP No.1, and

16   RFP No. 4. The motion is DENIED as to RFP No. 5 and Strickland's request for fees. Texaco

17   must produce the requested discovery within 45 days.

18        DATED this 15th day of December 2016.

19

20

21

22

23

24        John C. Coughenour

25        UNITED STATES DISTRICT JUDGE

26